609 A.2d 394

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
WILLIAM W. SHOMO, DEFENDANT–APPELLANT.

Argued March 3, 1992—Decided July 1, 1992.

*Abby P. Schwartz,* Assistant Deputy Public Defender, argued the cause for appellant (*Wilfredo Caraballo,* Public Defender, attorney).

*James F. Smith,* Assistant County Prosecutor, argued the cause for respondent (*Jeffrey S. Blitz,* Atlantic County Prosecutor, attorney).

*Craig V. Zwillman,* Deputy Attorney General, argued the cause for *amicus curiae,* Attorney General of new Jersey (*Robert J. Del Tufo,* Attorney General, attorney).

The opinion of the Court was delivered by

STEIN, J.

In this case the Court considers the validity of partial verdicts returned during the course of jury deliberations in a criminal trial. Here, the court treated as final a verdict on two counts of the four-count indictment against defendant, returned at the end of the first day of the jury's deliberations. The Appellate Division affirmed in an unreported opinion, one member dissenting. Defendant appeals as of right. *R.* 2:2–1(a).

I

The indictment was based on events that occurred during a barroom fight. While defendant was engaged in an altercation with another patron, a knife that he purportedly used at work fell out of his pocket. Defendant picked it up and stabbed the victim three times. He was indicted on the following five counts:

Count one—possession of a weapon under circumstances not manifestly appropriate for lawful use. (*N.J.S.A.* 2C:39–5(d));

Count two—possession of a weapon with purpose to use it unlawfully against another. (*N.J.S.A.* 2C:39–4);

Count three—aggravated assault. (*N.J.S.A.* 2C:12–1(b)(1));

Count four—aggravated assault with a deadly weapon. (*N.J.S.A.* 2C:12–1(b)(2));

Count five—possession of a weapon by a convicted person. (*N.J.S.A.* 2C:39–7).

Because the trial court severed count five from the indictment, only the first four counts were before the jury.

Shortly after it began deliberating, the jury informed the court that it had arrived at a verdict on counts one and two but

was unable to arrive at a verdict on counts three and four. In a discussion with counsel, the court recommended accepting the verdicts on the first two counts and instructing the jury to continue its deliberations on the remaining counts. The defense attorney noted that he "would have no objection to letting them go at this time and bringing them back tomorrow morning." The jury returned to the courtroom and the foreperson informed the court that the jury found defendant guilty of possession of a weapon under circumstances not manifestly appropriate for lawful use (count 1), and not guilty of possession of a weapon with the purpose to use it unlawfully against another (count two). The jury had not yet reached a verdict on the third and fourth counts. The court did not instruct the jury regarding the finality of its verdict on the first two counts, and the court clerk did not then record the verdict in the trial minutes.

After hearing the partial verdicts, the court told the jury that deliberations would continue in the morning. Before discharging the jury, however, the court stated:

Of course, as you know, your verdict has to be unanimous. It is your duty as jurors, however, to consult with one another and to deliberate with a view to reaching an agreement if you can do so without violence to your individual judgments. Actually each of you has to decide the case by yourself, but only after full and impartial consideration of the evidence with your fellow jurors.

*Bear in mind that during the course of your deliberations, you should not hesitate to re-examine your views and change your opinion if you become convinced that you're in error.* Ultimately, you're not required to surrender your honest conviction as to the weight or effect of evidence just because of somebody else's opinion or just to return a verdict. [Emphasis added.]

The following morning, the court received several notes from the jury. The first note inquired whether defendant was "guilty by admission" because he had testified that he had stabbed the victim three times. While the court discussed that note with counsel, the jury transmitted a second note that said "apparently we are not going to reach a unanimous decision on the third and fourth counts; what is our next step?" The court then answered the first question, and instructed the jurors to continue deliberations. Less than two hours later, the jury

informed the court that it had found defendant not guilty of the third and fourth counts. The verdicts on all four counts were then recorded in the trial minutes.

In addition to the two notes recorded during the jury's deliberations, the court had received another note, not recorded in the trial record, before the jury returned its verdict on the third and fourth counts. On the second day of jury deliberations, the court

> received a note from the jury, which, to my recollection, said something to the effect—my recollection is it was from one juror, *may I change my vote on the first count,* and it had something under that. That's my recollection of it, in any event. And counsel were in chambers and what we did, I showed the note to counsel. We agreed that the—rather than convening court [sic] at that particular time, we would just write the word no, N–O which I did, at the bottom of that note. [Emphasis added.]

In response to a motion by defense counsel, the court amended the record to include reference to that note.

On the first count, the court sentenced defendant to a fifteen-month prison term and imposed a $30 V.C.C.B. penalty. Defendant then pled guilty to count five, which had previously been severed. Pursuant to the plea agreement, the court sentenced defendant to a concurrent fifteen-month prison term and ordered him to pay another $30 V.C.C.B penalty.

The Appellate Division affirmed the convictions, the dissenting member concluding that the trial court had committed plain error by accepting the partial verdict because the jury had never been instructed concerning the finality of partial verdicts. In addition, the dissent noted that the court should have polled the jury when it received the note indicating that at least one juror desired to change his or her vote on the first count.

## II

In determining the validity of the jury's partial verdict, we first consider whether a trial court may accept a partial verdict rendered before the jury completes its deliberations. We also consider the steps a trial court should take to safeguard the

rights of an accused by insuring that the jury understands that its partial verdict is final.

■ *Rule* 3:19–1(a) expressly addresses partial verdicts. That Rule states:

> Several Defendants or Counts. If there are 2 or more counts of an indictment or 2 or more defendants tried together, the jury may return a verdict or verdicts with respect to a defendant or defendants as to whom it has agreed, specifying the counts on which it has agreed; the defendant or defendants may be tried again on the count or counts as to which it has not agreed.

Thus, the Rule expressly permits a jury to deliver a partial verdict with respect either to specific defendants or to specific counts of a multi-count indictment. The accompanying comment indicates that the Rule contemplates partial verdicts rendered at the *end* of jury deliberations, when the jury has agreed on some counts but has determined that it cannot agree on the remaining counts. *See* Pressler, *Current N.J. Court Rules*, comment on *R.* 3:19–1 (1992) (authorizing retrial of those counts "as to which the jury has reached no verdict"). The Rule, however, does not indicate whether a partial verdict may be delivered before jury deliberations are concluded.

Although several New Jersey cases mention interim partial verdicts rendered during the course of jury deliberations, none explicitly discusses their validity or use. *See, e.g., State v. Corsaro*, 107 *N.J.* 339, 526 *A.*2d 1046 (1987) (implicitly upholding partial verdict rendered before recess when one juror returned late and in an intoxicated condition and court's subsequent substitution of juror constituted plain error); *State v. D'Amato*, 218 *N.J.Super.* 595, 528 *A.*2d 928 (App.Div.1987) (implicitly upholding partial verdict on theft count when subsequent deliberations on murder charge failed to produce verdict), *certif. denied*, 110 *N.J.* 170, 540 *A.*2d 169 (1988).

The Federal Rules of Criminal Procedure also address partial verdicts:

> Several Defendants. If there are two or more defendants, the jury *at any time* during its deliberations may return a verdict or verdicts with respect to a defendant or defendants as to whom it has agreed; if the jury cannot agree

with respect to all, the defendant or defendants as to whom it does not agree may be tried again. [*Fed.R.Crim.P.* 31(b) (emphasis added).]

Unlike the New Jersey Rule, the federal rule permits partial verdicts against some but not all defendants to be returned at any time during the jury's deliberations. The federal rule, however, does not explicitly authorize partial verdicts on some of the counts of a multi-count indictment.

Nevertheless, federal courts have upheld the validity of interim partial verdicts with respect either to some of the defendants in a multi-defendant case or to some of the counts of a multi-count indictment. *See, e.g., United States v. Dakins,* 872 *F.*2d 1061, 1064 (D.C.Cir.) (upholding partial verdict even after one juror indicated that she had a "question about the decision that was made on one of the defendants," where court had previously polled jury on its announcement of partial verdict), *cert. denied,* 493 *U.S.* 966, 110 *S.Ct.* 410, 107 *L.Ed.*2d 375 (1989); *United States v. Ross,* 626 *F.*2d 77, 80–81 (9th Cir.1980) (accepting verdict on one count and returning jury for further deliberations on remaining counts, absent evidence that jury had been coerced into reaching its verdicts); *United States v. Hockridge,* 573 *F.*2d 752, 759–60 (2d Cir.) (holding that partial verdict on one count was final on recordation and jury's assent), *cert. denied,* 439 *U.S.* 821, 99 *S.Ct.* 85, 58 *L.Ed.*2d 112 (1978); *United States v. Barash,* 412 *F.*2d 26, 32 (2d Cir.) (upholding practice of sending jury back for further deliberations on unresolved counts after receiving partial verdict), *cert. denied,* 396 *U.S.* 832, 90 *S.Ct.* 86, 24 *L.Ed.*2d 82 (1969).

Other states also have allowed juries to render partial verdicts during the course of jury deliberations. See *e.g., People v. Hernandez,* 163 *Cal.App.*3d 645, 209 *Cal.Rptr.* 809, 817–818 (1985) (explaining that under California Penal Code, trial court has option either to receive, acknowledge, and record each verdict as jury arrives at it, or to wait to receive verdict when jury finishes deliberations); *Thomas v. United States,* 544 *A.*2d 1260, 1262–63 (D.C.1988) (acknowledging that defendant could have requested partial verdict on three charges on which jury

apparently agreed, pursuant to court rule that followed language of federal rule); *Johnson v. United States,* 434 *A.*2d 415, 419 (D.C.1981) (finding no error when jury returned partial verdict on two counts and was instructed to resume deliberations on remaining counts); *see also N.Y.Crim.Proc.Law* § 310.70(1)(b) (McKinney 1992) (directing that if reasonable possibility of ultimate agreement on unresolved offenses exists, court can *either* accept partial verdict and direct jury to resume deliberations on remaining counts or order jury to resume deliberation on entire case).

In certain circumstances, an interim partial verdict may assist a trial court in making orderly and expeditious progress in adjudicating a case. In the words of Judge Learned Hand, the practice of accepting partial verdicts "promote[s] despatch, and [does] not impair the fairness of the trial." *United States v. Cotter,* 60 *F.*2d 689, 691 (2d Cir.), *cert. denied,* 287 *U.S.* 666, 53 *S.Ct.* 291, 77 *L.Ed.* 575 (1932). For example, "[b]y taking a partial verdict, the court is able to hedge against the possibility of juror illness or death or prejudice by publicity." *Hockridge, supra,* 573 *F.*2d at 759. Allowing partial verdicts might assist a jury in proceeding systematically from count to count, *see United States v. Clainos,* 163 *F.*2d 593, 596 (D.C.Cir.1947), or might foster early resolution of criminal trials when the government has indicated a willingness to dismiss the unresolved charges. Partial verdicts may also be proper when the jury has deliberated at length in a multi-party or multi-count case. Edward J. Devitt and Charles B. Blackman, *Federal Jury Practice and Instructions* § 18.16, at 611–12 (3d ed. 1977). Thus, we recognize the utility of partial verdicts in certain circumstances.

■ Nevertheless, the practice of according finality to interim partial verdicts may interfere with the deliberative process by "prematurely freez[ing] a jury into a partial verdict" before it considers all of the relevant issues. *See* Daniel J. Kornstein, *Impeachment of Partial Verdicts,* 54 *St. John's L.Rev.* 663,

687 (1980). Acceptance of interim partial verdicts runs counter to a rational factfinding process because "[w]hen many items of evidence are involved, each has the effect of adjusting, in greater or lesser degree, the factfinder's evaluation of the probability that the proposition before him is true." Laurence H. Tribe, *Trial by Mathematics: Precision and Ritual in the Legal Process*, 84 *Harv.L.Rev.* 1329, 1350 (1971). Preventing interference with jury deliberations and preserving the jury's independence are of paramount importance to a fair trial. *See State v. Collier*, 90 *N.J.* 117, 122, 447 *A.*2d 168 (1982) ("Integral to [the right to trial] is a jury verdict free from untoward interference from any source, including the court."); *State v. Czachor*, 82 *N.J.* 392, 400–01, 413 *A.*2d 593 (1980). Thus, acceptance of partial verdicts before the jury reaches a conclusion on all issues could distort the jury's deliberative process.

██ Moreover, partial verdicts may, under certain circumstances, implicate principles of double jeopardy. *See* Pressler, *supra*, comment on *R.* 3:19–1 (noting that double jeopardy prohibits retrying a defendant on lesser-included offense if jury does not agree on that offense but renders verdict on greater offense). Accordingly, for a partial verdict to be valid the court must ensure that a defendant's rights have not been compromised. *See Clainos, supra*, 163 *F.*2d at 597. In addition, an interim partial verdict could impact adversely on the State's interests. For example, it may be inadvisable for a court to accept a partial verdict on a lesser-included offense if that verdict could affect or bar further proceedings on the greater offense.

 Because of the potential compromise to either a defendant's or the government's interests, and the risk of interfering with jury deliberations, we strongly discourage routine use of partial verdicts. Nevertheless, trial courts possess the discretion to accept such verdicts absent a showing of prejudice to the defendant. Interim partial verdicts may be warranted, for example, when the jury has deliberated at length, when the

charges against a defendant are rooted in unrelated facts, when the court has reason to be concerned that a juror may become ill before deliberations conclude, when there is risk of taint to the jury's decision-making process, or when the State has indicated its intention to dismiss the unresolved counts.

■ When the jury returns an interim partial verdict, the court must ensure that the jury intended its partial verdict to be final by specifically instructing the jury regarding the verdict's finality. As one court noted, a "neutral explanation of the jury's options either to report the verdicts reached, or to defer reporting of all verdicts until the conclusion of deliberations" can only assist the jury. *State v. DiLapi,* 651 *F.*2d 140, 147 (2nd Cir.1981). The instruction should inform the jury unambiguously, before the court receives the verdict, that its partial verdict will be treated in all respects as a final verdict, not subject to reconsideration, even though the jury will continue deliberations on other counts. Absent such an instruction, the risk is too great that a jury might not comprehend a partial verdict's final effect, potentially denying a defendant the right to a unanimous jury verdict.

■ Other factors considered by courts in determining whether a jury intended an interim partial verdict to be final include whether the jury announced the verdict in open court, whether the court recorded the verdict, and whether the jury was polled. *See Posey v. United States,* 416 *F.*2d 545, 554 (5th Cir.1969), *cert. denied,* 397 *U.S.* 946, 90 *S.Ct.* 964–65, 25 *L.Ed.*2d 127 (1970); *State v. Blisak,* 26 *N.J.Misc.* 197, 203, 58 *A.*2d 711 (Ct.Qtr.Sess.1948). Most courts evaluating partial verdicts have considered those factors in according partial verdicts finality. *See, e.g., Dakins, supra,* 872 *F.*2d at 1064; *Ross, supra,* 626 *F.*2d at 80; *United States v. Love,* 597 *F.*2d 81, 84 (6th Cir.1979); *Hockridge, supra,* 573 *F.*2d at 759; *United States v. Taylor,* 507 *F.*2d 166, 168 (5th Cir.1975); *Hernandez, supra,* 209 *Cal.Rptr.* at 816; *Thomas, supra,* 544 *A.*2d at 1262; *State v. Knight,* 143 *Wis.*2d 408, 421 *N.W.*2d 847,

850–51 (1988); *cf.* Charles E. Torcia, 4 *Wharton's Criminal Procedure* § 578 (12th ed. 1976) (verdict is final when announced and recorded in open court). We hold that an interim partial verdict may be considered final when a jury was properly instructed, and when the verdict was received in open court, recorded, and, if requested, confirmed by a polling of the jurors. Under those conditions, an interim partial verdict will be subject to impeachment in the same limited circumstances that warrant challenge of a final verdict rendered at the end of jury deliberations. *See State v. Koedatich,* 112 *N.J.* 225, 288, 548 *A.*2d 939 (1988) (holding that verdict may be challenged only on manifestation of racial or religious bigotry or if juror discussed aspects of case based on personal knowledge not in evidence), *cert. denied,* 488 *U.S.* 1017, 109 *S.Ct.* 813, 102 *L.Ed.*2d 803 (1989); *accord State v. Athorn,* 46 *N.J.* 247, 251–52, 216 *A.*2d 369, *cert. denied,* 384 *U.S.* 962, 86 *S.Ct.* 1589, 16 *L.Ed.*2d 674 (1966).

### III

In this case, the circumstances giving rise to the partial verdict do not indicate that the jury intended its verdict to be final. Although the verdict was announced in open court, the verdict was not then recorded. More significantly, the jury had received no instruction regarding the effect of its verdict. Moreover, the court's post-verdict instruction may have led the jury to believe that its partial verdict could be reconsidered. As noted, after hearing the partial verdict and before dismissing the jury for the evening, the court instructed the jury that "during the course of your deliberations, you should not hesitate to re-examine your views and change your opinion if you become convinced that you're in error." The note sent the following day indicated that at least one juror had reconsidered his or her vote on the partial verdict. Additionally, because the various assault and weapon-possession charges are based largely on similar facts, the possibility exists that continued deliberations might have caused a juror to alter his or her views with

respect to the counts resolved by the partial verdict. We cannot accord validity to a partial verdict that the jury may not have thought was final and that may not have reflected the jury's unanimous determination.

The partial verdict here warrants reversal despite the defense attorney's apparent acquiescence and failure to object. Trial errors that "cut mortally into the substantive rights of the defendant" are reversible on appeal. *State v. Harper*, 128 *N.J.Super.* 270, 277, 319 *A.*2d 771 (App.Div.), *certif. denied*, 65 *N.J.* 574, 325 *A.*2d 708 (1974). Here, the possibility that defendant may have been sentenced based on a less-than-unanimous verdict—or based on a unanimous verdict that some jurors may not have regarded as final—seriously implicates defendant's substantive rights. *See R.* 1:8–9; *State v. Cordasco*, 2 *N.J.* 189, 202, 66 *A.*2d 27 (1949). The jury might well have reached a different result had it not rendered the partial verdict or had it received proper instructions regarding that verdict's finality. In addition, our reversal of defendant's conviction for possession of a weapon under circumstances not manifestly appropriate for lawful use requires that his conviction for possession of a weapon by a convicted person also be reversed. The factual basis for defendant's plea no longer exists. *See State v. Butler*, 89 *N.J.* 220, 224, 445 *A.*2d 399 (1982); *State v. Taylor*, 80 *N.J.* 353, 362, 403 *A.*2d 889 (1979).

We reverse the judgment of the Appellate Division and remand the matter to the Law Division for further proceedings consistent with this opinion.

*For reversal and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*For affirmance*—None.