202 N.J. Super. 233 (1985)
494 A.2d 822
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
MARIA ORTIZ AND WILFREDO RODRIGUEZ, DEFENDANTS-RESPONDENTS.
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
MARIA ORTIZ, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 28, 1985.
Decided June 17, 1985.
*237 Before Judges McELROY, DREIER and SHEBELL.
Hilary L. Brunell, Assistant Prosecutor, argued the cause for appellant-cross-respondent (George L. Schneider, Essex County Prosecutor; Hilary L. Brunell, on the briefs).
Blair R. Zwillman, argued the cause for respondent-cross-appellant Ortiz (Zwillman & Zwillman, attorneys; Blair R. Zwillman, on the briefs).
Claire Drugach, argued the cause for respondent Rodriguez (Joseph H. Rodriguez, Public Defender, attorney; Bruce J. Kaplan, Assistant Deputy Public Defender, on the brief).
The opinion of the court was delivered by SHEBELL, J.A.D.
The State appeals the entry of judgments of acquittal n.o.v. following the convictions of Maria Ortiz and Wilfredo Rodriguez on charges of conspiracy to murder Maria's husband, Alfredo Ortiz, (N.J.S.A. 2C:5-2) and on Maria's conviction for his murder (N.J.S.A. 2C:11-3a). Additionally, the jury convicted Maria of hindering apprehension (N.J.S.A. 2C:29-3a(2)) and tampering with a witness (N.J.S.A. 2C:29-3a(3)). Wilfredo was also convicted by the same jury of murdering Alfredo (N.J.S.A. 2C:11-3a), unlawfully possessing a knife (N.J.S.A. 2C:39-5d), unlawfully possessing a knife for the purpose of using it unlawfully against another (N.J.S.A. 2C:39-4d) and hindering prosecution by intimidation (N.J.S.A. 2C:29-3b(3)).
Maria appeals her convictions for hindering apprehension and tampering with a witness. We have consolidated these two appeals. Wilfredo has also appealed his convictions in a separate direct appeal however his brief has not yet been filed.
Defendants' joint trial proceeded before a jury. After the State rested its case the trial judge granted Maria's motion for acquittal on the conspiracy and murder counts and dismissed the conspiracy count against Wilfredo. The judge denied the *238 State's request for a stay of the trial pending appeal to this court, however, the attorneys managed to appear before a judge of the Appellate Division in Newark where the trial was being conducted. The Appellate Division judge in concurrence with one other judge of the Appellate Division summarily reversed the trial court's dismissal while preserving "defendant's right to move for a judgment of acquittal pursuant to R. 3:18-2 after the return of any guilty verdict." The record of the proceedings below indicates that a Supreme Court justice declined to grant leave to appeal from the order of reversal.
The trial was thereafter completed and the jury returned guilty verdicts against defendants on all counts of the indictment. The trial judge later granted the motions of both defendants for judgments of acquittal n.o.v. on the conspiracy convictions and he granted Maria the same relief on the murder count while denying alternative motions for new trials. The State sought unsuccessfully at both the trial and appellate levels to stay the judgments n.o.v., however, its motion for leave to appeal was granted. Defendants moved before this court to dismiss or to summarily dispose of the State's appeal; this relief was denied.

I
Defendants again seek dismissal of the State's appeal asserting that there is no authority for appellate review of a judgment of acquittal entered on grounds of insufficient evidence at the end of the State's case either under R. 2:3-1 or any statute or other authority. They also contend that such appellate review would constitute a violation of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution as well as Article 1, paragraph 11 of the New Jersey Constitution. We agree on both grounds and are constrained to dismiss the State's appeal despite our disagreement with the trial judge's initial granting of judgments of acquittal at the *239 end of the State's case and his later granting of judgments notwithstanding the verdicts.
R. 2:3-1, entitled "Appeal by the State in Criminal Actions," provides:
In any criminal action the State may appeal or, where appropriate, seek leave to appeal pursuant to R. 2:5-6(a):
(a) to the Supreme Court from a final judgment or from an order of the Appellate Division, pursuant to R. 2:2-2(b) or 2:2-3;
(b) to the appropriate appellate court from: (1) a judgment of the trial court dismissing an indictment, accusation or complaint, where not precluded by the constitution of the United States or of New Jersey; (2) an order of the trial court entered before trial in accordance with R. 3:5 (search warrants); (3) a judgment of acquittal entered in accordance with R. 3:18-2 (judgment n.o.v.) following a jury verdict of guilty; (4) a judgment in a post-conviction proceeding collaterally attacking a conviction or sentence; (5) an interlocutory order entered before, during or after trial, or, (6) as otherwise provided by law. [(emphasis ours)]
This rule does not specifically provide for appeals by the State of judgments of acquittal entered by the trial judge at the end of the State's case. The rule recognizes that even where the judgment dismisses charges, an appeal may be precluded by the United States or New Jersey constitutions in certain circumstances. R. 2:3-1(b)(1). Appeals from judgments of acquittal are constitutionally permissible only where the acquittal is unrelated to a factual determination of defendant's guilt or innocence. See United States v. Scott, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978); Sanabria v. United States, 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978); State v. Barnes, 84 N.J. 362 (1980); State v. Barcheski, 181 N.J. Super. 34 (App.Div. 1981). Moreover, R. 2:3-1(b)(3) does specifically authorize appeals of judgments of acquittal entered in accordance with R. 3:18-2 where the court has entered judgment n.o.v. following a jury verdict of guilty. If the rule contemplated appeals by the State from judgments of acquittal at the end of the State's case we see no reason why specific provision would not have been made.
The Double Jeopardy Clause of the Fifth Amendment of the United States Constitution is applicable to the States. Benton *240 v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). It provides that no "person [shall] be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. Its New Jersey constitutional counterpart, which has been held coextensive in application with the federal prohibition against double jeopardy, State v. Farmer, 48 N.J. 145, 168 (1966), cert. den. 386 U.S. 991, 87 S.Ct. 1305, 18 L.Ed.2d 335 (1967), provides "[n]o person shall, after acquittal, be tried for the same offense." N.J. Const. (1947) art. 1, ¶ 11; see State v. Lynch, 79 N.J. 327, 340 (1979). See generally Heckel, "The Bill of Rights," in II State of New Jersey Constitutional Convention of 1947 1336, 1351-53 (1951) (discussing source and judicial interpretation of New Jersey's Double Jeopardy Clause).
The Federal double jeopardy prohibition has been held not to preclude the ordering of a new trial where the jury verdict of guilty has been set aside as against the weight of the evidence. Tibbs v. Florida, 457 U.S. 31, 32, 102 S.Ct. 2211, 2213, 72 L.Ed.2d 652, 655 (1982). However, as the Court pointed out in Tibbs:
[T]he Double Jeopardy Clause attaches special weight to judgments of acquittal. A verdict of not guilty, whether rendered by the jury or directed by the trial judge, absolutely shields the defendant from retrial. A reversal based on the insufficiency of the evidence has the same effect because it means that no rational factfinder could have voted to convict the defendant. [457 U.S. at 41, 102 S.Ct. at 2217, 72 L.Ed.2d at 661 (footnotes omitted) (emphasis ours)]
Earlier the United States Supreme Court in Scott noted that one of the "venerable principles of double jeopardy jurisprudence" is that
... [a] judgment of acquittal, whether based on a jury verdict of not guilty or on a ruling by the court that the evidence is insufficient to convict, may not be appealed and terminates the prosecution when a second trial would be necessitated by a reversal. [437 U.S. at 90-91, 98 S.Ct. at 2194, 57 L.Ed.2d at 74]
On the same day that Scott was handed down the Court pronounced in Sanabria that even where the trial court's ruling "led to an erroneous resolution in the defendant's favor on the merits of the charge" the Double Jeopardy Clause absolutely bars a second trial. 437 U.S. at 78, 98 S.Ct. at 2186, 57 L.Ed.2d *241 at 63. See also Burks v. United States, 437 U.S. 1, 10-11, 98 S.Ct. 2141, 2146, 57 L.Ed.2d 1, 9 (1978).
Recently, in State in Interest of C.K., 198 N.J. Super. 290, 294-95 (App.Div. 1984) we reversed the juvenile's conviction and stated:
We are convinced that the trial judge's adjudication of delinquency constituted a clear violation of the double jeopardy prohibition. We view the instant matter to be governed by the principles enunciated in United States v. Scott, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978); Sanabria v. United States, 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978); United States v. Martin Linen Supply Co., 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977), and State v. Lynch, 79 N.J. 327 (1979). The common threa[d] of these decisions is that a "judgment of acquittal [or finding of not guilty], however erroneous, bars further prosecution...." Sanabria v. United States, supra, 437 U.S. at 69, 98 S.Ct. at 2172, 57 L.Ed.2d at 57. It is now abundantly clear that an acquittal due to insufficient proofs brought about by erroneous evidentiary rulings does not justify reopening the case. See Lee v. United States, 432 U.S. 23, 30 n. 8, 97 S.Ct. 2141, 2146 n. 8, 53 L.Ed.2d 80, 87 n. 8 (1977); United States v. Martin Linen Co., supra, 430 U.S. at 571, 97 S.Ct. at 1354, 51 L.Ed.2d at 651. "Once the acquittal resolves, correctly or not, the factual elements of the offense charged," double jeopardy prevents reconsideration. State v. Lynch, supra, 79 N.J. at 343.
The State alleges, notwithstanding the clear authority cited above, that the appeal to the Appellate Division of the judgment of acquittal at the end of the State's case was proper because the jury had not been discharged and the trial would have continued even if the judgments of acquittal were not reversed as the remaining charges against the defendants needed to be tried to a conclusion. In our view, defendants' "absolute shield" from retrial attached immediately to each count upon which the trial judge entered the judgment of acquittal. See 198 N.J. Super. at 294-95. The mere happenstance that there were other charges which required a continuation of the trial in our judgment does not affect the special weight that attached to the acquittals as it was determined factually that the State had failed to provide sufficient proof to sustain the charges. The bar of double jeopardy should not be affected because the Appellate Division almost instantly summarily reversed the judgment of acquittal or because the jury had not been discharged. See id.
*242 The State points out that neither defendant raised the defense of double jeopardy before the Appellate Division at the time of the interlocutory appeal or before the trial court when they returned for the continuation of the trial. Counsel for one defendant candidly admitted at oral argument that the issue was missed in the excitement of the proceedings and that the appellate judges considering the interlocutory appeal did not have the issue before them. We find no reported authority holding that a defendant who has been acquitted may even knowingly and voluntarily waive his double jeopardy right and permit the State to appeal from that acquittal. See State v. Gerstmann, 198 N.J. Super. 175, 182 (App.Div. 1985). While R. 3:10-2 provides that the defense of double jeopardy must be raised by motion before trial and that failure to present such a defense constitutes a waiver, this rule is obviously based upon the premise that there is sufficient time prior to trial for the raising of such defenses and for consideration of the issues involved. Such was not the case here where during the very trial of the case, which the trial court refused to stay, the attorneys scurried to obtain appellate review while judge and jury awaited the continuation of the trial. It would be unprincipled and unjust in such circumstances to deprive the defendants of their constitutional right to the bar of double jeopardy because neither defense counsel nor appellate court considered its application to the pressing issue at hand. We further point out that under R. 3:10-2 the court is given authority, for good cause shown, to grant relief from the waiver. Assuming a waiver existed we are satisfied that the circumstances constitute good cause for relief from that waiver.
The State suggests that we are barred from dismissing its appeal on the grounds of double jeopardy because the earlier decision of another part of this court constitutes the "law of the case." The State has failed to demonstrate to our satisfaction that the double jeopardy issue was previously considered either by the appellate panel or the Supreme Court justice. We reject the argument that the prior order of the Appellate Division, *243 reversing the judgment of acquittal and remanding for a continuation of the trial, implicitly renounced the bar of double jeopardy.
The "law of the case" doctrine "most commonly applies to the binding nature of appellate decisions upon a trial court if the matter is remanded for further proceedings, or upon a different appellate panel which may be asked to reconsider the same issue in a subsequent appeal." State v. Hale, 127 N.J. Super. 407, 410 (App.Div. 1974). With respect to the application of the doctrine to the question of whether or not a decision made during one stage of litigation is binding throughout the course of the action on a court of equal jurisdiction it was stated in Ross Products, Inc. v. New York Merchandise Co., 242 F. Supp. 878, 879 (S.D.N.Y. 1965) (footnotes omitted) that:
... the "law of the case" concept is merely a non-binding decisional guide addressed to the good sense of the court in the form of "a cautionary admonition" against relitigation "when the occasion demands it."
We cited this general principle with approval as it pertains to decisions of trial courts in Hale, 127 N.J. Super. at 411. Fundamental fairness requires that a similar view of the doctrine be taken in the circumstances presented here as the issue was excusably not raised during interlocutory review and is now put directly in issue on final appeal. Cf. State v. Stewart, 196 N.J. Super. 138, 143 (App.Div. 1984); State v. Tomaras, 184 N.J. Super. 551, 553 (App.Div. 1982). We find equally unpersuasive the State's suggestion that our decision not to dismiss its appeal on a summary basis pursuant to R. 2:8-2 and R. 2:8-3(b) established the "law of the case." The decision to give fuller consideration to the issues presented did not constitute an adjudication on the merits of those issues. Thus we hold that both Constitutions require that the State's appeal be dismissed.

II
Maria Ortiz claims that the trial evidence on the conspiracy and murder counts was improperly admitted in view of the finding that the evidence was insufficient to establish those *244 charges. She argues that since the evidence was irrelevant to the hindering prosecution and witness tampering counts she was prejudiced in her right to a fair trial on those charges. The multiple counts against Maria Ortiz were joined in one indictment and properly proceeded to trial with proofs being adduced as to all charges. It cannot now be claimed that the evidence admitted as to the charges of conspiracy and murder was improperly admitted. In addition, considering the nature and circumstances of the remaining charges, we are unable to agree with defendant's blanket assertion that the evidence of her participation in the conspiracy and murder was irrelevant to the allegations that she gave Rodriguez refuge in her apartment after the killing, that he washed her husband's blood from his body in her bathroom, that she and Wilfredo threatened Luis Ortiz in order to prevent him from going to the police and that they brought him against his wishes to a home and tried to prevent him from leaving to speak to the police. We conclude that Maria was not denied a fair trial with respect to the hindering and tampering charges because of the proofs admitted at trial on the conspiracy and murder counts. Cf. Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431, 437 (1974).
Maria asserts that the trial court improperly limited her attempts on cross-examination to demonstrate the animosity of decedent's son, Luis Ortiz, towards her. We find no merit to this claim. Although a party has the right to show bias, including hostility of an adverse witness, the trial court has discretion to determine the extent to which the details may be brought out. State v. Smith, 101 N.J. Super. 10, 13-14 (App. Div. 1968), certif. den. 53 N.J. 577 (1969); see N.J.S.A. 2A:81-12; cf. Evid.R. 20. The trial judge permitted a demonstration of Luis' alleged bias, hostility and alleged intention to gain from Maria's predicament. We find no evidence that the court in limiting certain details abused its discretion. See State v. Pontery, 19 N.J. 457, 473 (1955).
*245 We do not agree that the court's refusal to charge N.J.S.A. 3B:7-6 was error. This statute provides that a conviction for the intentional killing of one's own spouse deprives the convicted spouse of his or her share of decedent's estate. See N.J.S.A. 3B:7-1 to -4. The issue of the witness gaining his father's house and money if Maria were convicted was put before the jury both during the trial and upon defense counsel's summation. There was no evidence that the witness was aware of the statute. Further, defense counsel did not request the charge until after the court's entire charge had been given to the jury and the jury had retired, at which time the court found no reason to interrupt the jury's deliberations. In addition, defendant now stands acquitted of her husband's murder. Under these circumstances defendant's claim of error is not only attenuated, it is devoid of significant force.
We find no merit to defendant's contention that the trial court erred in refusing to read back testimony as requested by the jury. Defendant demonstrates no prejudice or unfairness by the procedure followed by the court and we find no abuse of discretion by the trial judge. State v. Wolf, 44 N.J. 176, 185-86 (1965).
Lastly, defendant maintains that the guilty verdicts on the hindering and tampering charges were against the weight of the evidence. The trial judge considered Maria's application for a new trial on these two charges and denied relief. He indicated that the credibility of the witnesses was within the jury's province and that he could not say "there was clearly and convincingly any manifest denial of justice under the law." R. 2:10-1 provides that on appeal such ruling "shall not be reversed unless it clearly appears that there was a miscarriage of justice under the law." We find no basis for reversal on this holding.
The appeal of the State is dismissed and Maria Ortiz's judgment of conviction is affirmed.