NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2838-16T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

SIWAN R. BROWN, a/k/a
SHAWN BROWN,

     Defendant-Appellant.
_____

> **APPROVED FOR PUBLICATION**
> **AS REDACTED**
> **December 27, 2018**
>
> **APPELLATE DIVISION**

Argued November 26, 2018 – Decided  December 27, 2018

Before Judges Sabatino, Sumners and Mitterhoff.

On appeal from Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 15-09-1253.

Daniel S. Rockoff, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Daniel S. Rockoff, of counsel and on the brief).

Lila B. Leonard, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Lila B. Leonard, of counsel and on the briefs).

The opinion of the court was delivered by

SABATINO, P.J.A.D.

Tried by a jury, defendant Siwan R. Brown was found guilty of various drug offenses. The State's case was largely based on the seizure of over one thousand bags of heroin and other drug paraphernalia from a residence that defendant shared with other relatives.

Among other things, defendant argues on appeal the trial court erred in declining the jury's request during their deliberations to have the court play back defense counsel's closing argument for them. The court denied that request on the basis that, as the Model Criminal Jury Charges state, the summations of counsel do not comprise evidence. The propriety of granting such a playback request from jurors has not been addressed before in any published New Jersey opinion, although the issue has arisen in case law from a few other jurisdictions.

For the reasons that follow, we hold that trial courts in our State have the discretion in appropriate circumstances to grant jury requests to have the closing arguments of all counsel played back or read back to them, in full or in part. In recognizing that discretionary authority, we follow other jurisdictions that have acknowledged the discretion of judges to allow such playbacks or readbacks. We reject, however, defendant's contention that the denial of the jury's playback request in his own case was unduly prejudicial and requires a new trial.

A-2838-16T1

In the unpublished portion of this opinion, we affirm the trial court's pretrial ruling to admit incriminating statements that defendant made to police officers after they stopped his car for a traffic violation and smelled marijuana. However, with the State's acquiescence, we remand this case to the trial court to reevaluate, under the multi-factor voluntariness test of State v. King, 44 N.J. 346 (1965), whether the police obtained defendant's valid consent to search his residence after the motor vehicle stop. We also remand this matter for the trial court to reevaluate whether the police had a sufficient lawful basis at the time of the motor vehicle stop to request defendant's consent to search his residence.

I.

**[At this court's direction Parts I(A), (C), (D), (E), II, III, and V of this opinion, which concern matters not pertinent to the playback issue in Part IV, have been omitted from the published version of this opinion. R. 1:36-3.]**

B.

The Indictment

Based on this evidence, a Hudson County grand jury charged defendant with multiple crimes. The charges included first-degree operation of a facility for manufacturing heroin, N.J.S.A. 2C:35-4 (count one); second-degree possession of heroin with intent to distribute, N.J.S.A. 2C:35-5(a)(l) and

A-2838-16T1

N.J.S.A. 2C:35-5(b)(2) (count two); third-degree possession of heroin with intent to distribute while within 1,000 feet of school property, N.J.S.A. 2C:35-7 (count three); second-degree possession of heroin with intent to distribute while within 500 feet of a public park, N.J.S.A. 2C:35-7.1 (count four); third-degree possession of heroin, N.J.S.A. 2C:35-10(a)(l) (counts five and six); and fourth-degree possession of drug paraphernalia with intent to distribute, N.J.S.A. 2C:36-3 (count seven).

IV.

We turn to the novel legal issue of whether the trial judge had the authority to grant the deliberating jurors' request to have defense counsel's closing argument played back or read back to them. This issue has not yet been the subject of any reported opinions in our State.

A.

The chronology pertinent to this playback issue is as follows. The jurors were read the court's charge on Friday, September 16, 2018. After some deliberations, the jurors submitted a question to the court that day that read: "The jury wants to confirm if [defendant] admitted and officially [sic] that he had two bundles in his pocket. Who alleges that [defendant] said this?" The trial judge informed the jurors that he could not answer this question, and instead they had to rely on their own recollection of the evidence presented.

Later that day, the jurors sent another note to the court that read: "We don't have unanimous votes. Are we going to wait for your advice?" The judge summoned the jurors back into the courtroom and told them that, because it was nearly 5:00 p.m. on a Friday, he was going to discharge them for the weekend. The judge instructed the jurors to return to court Monday morning to continue deliberations.

On Monday, September 19, the court started the day by replacing a juror, with no objection from counsel, with an alternate juror. The reconstituted jury then resumed its deliberations.

After a lunch order was arranged, the deliberating jurors sent a note to the court that read: "We would like to hear the defense summation again." Before calling the jurors back into the courtroom, the trial judge advised the prosecutor and defense counsel that he intended to respond to this request by telling the jurors that "openings and summations are not evidence [and] . . . they're going to have to rely upon their recollections."

Defense counsel urged the court to reconsider playing back the summations, even though they are not evidence. Counsel advised that a judge in the same vicinage had recently granted such a request, although that case was not precedential. The State objected, arguing that summations are not considered evidence and therefore should not be replayed.

5

The judge agreed with the State's position. The jurors were brought back into the courtroom. The judge explained to them that he would not replay summations because they are not considered evidence. He instructed them to rely on their recollections of the evidence to guide their decision.

The jurors also asked the court to replay the trial testimony of Officer DeJesus. The judge agreed to do so. He informed the jury the playback of the officer's direct and cross-examination would take about seventy minutes. The court took a short recess to arrange the playback. Before the playback occurred, the jurors sent back another note that said, "The jury is already satisfied with the answer given. We decided to withdraw the other request. The jury has reached a unanimous decision."

The jurors returned to the courtroom and issued their verdict, finding defendant not guilty on the manufacturing charge in count one, but guilty of the remaining charges. The judge polled the jurors individually and confirmed their verdict was unanimous.

B.

The core issue posed to us is whether a trial judge may – as at least one judge in the vicinage had apparently done – grant a jury's request to have all or parts of counsel's closing arguments played or read back to the jury a second

time. To resolve this question, we consider the important functional role that closing arguments can have in trial practice, particularly in a jury trial.

Unlike an opening statement from trial counsel, which can only preview what evidence is anticipated, a closing argument provides an important chance for all counsel to highlight and analyze the proofs that were actually presented at the trial. An effective summation can helpfully tie together for the trier of fact the various pieces of evidence, and explain how those pieces do or do not fit into the advocate's theory of the case.

In a criminal case such as this one, summations can supply an organized and focused explanation of how the evidence does or does not satisfy the elements of an offense, and how those proofs do or do not establish a defendant's guilt beyond a reasonable doubt. Closing arguments can also spotlight the testimony of certain witnesses, and address how cross-examination or other evidence either impeached (or, conversely, bolstered) the credibility of those witnesses. In essence, the summation has an important function of providing a coherent analysis of the evidence for the jury, or for the judge in a non-jury case.

The United States Supreme Court expounded upon these important principles in Herring v. New York, 422 U.S. 853 (1975). In that case, the Court struck down as unconstitutional under the Sixth Amendment a New

York statute that gave trial judges the discretion to disallow closing arguments of counsel in non-jury criminal cases.  The Court reasoned in Herring that such closing arguments are a vital part of trial counsel's advocacy role.  We repeat here portions of the Court's insights concerning that role:

> The widespread recognition of the right of the defense to make a closing summary of the evidence to the trier of the facts, whether judge or jury, finds solid support in history.  In the 16th and 17th centuries, when notions of compulsory process, confrontation, and counsel were in their infancy, the essence of the English criminal trial was argument between the defendant and counsel for the Crown.  Whatever other procedural protections may have been lacking, there was no absence of debate on the factual and legal issues raised in a criminal case.  As the rights to compulsory process, to confrontation, and to counsel developed, the adversary system's commitment to argument was neither discarded nor diluted.  Rather the reform in procedure had the effect of shifting the primary function of argument to summation of the evidence at the close of trial, in contrast to the "fragmented" factual argument that had been typical of the earlier common law.
>
> [Id. at 860-61 (emphasis added).]

As the Court further elaborated:

> It can hardly be questioned that closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case.  For it is only after all the evidence is in that counsel for the parties are in a position to present their respective versions of the case as a whole.  Only then can they argue the inferences to be drawn from all the testimony, and point out the weaknesses of their

8

adversaries' positions. And for the defense, <u>closing argument is the last clear chance to persuade the trier of fact that there may be reasonable doubt of the defendant's guilt</u>.

The very premise of our adversary system of criminal justice is that <u>partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free</u>. In a criminal trial, which is in the end basically a fact finding process, <u>no aspect of such advocacy could be more important than the opportunity finally to marshal the evidence for each side before submission of the case to judgment</u>.

[<u>Id.</u> at 862 (emphasis added) (citation omitted).]

Having emphasized these fundamental principles, the Court in <u>Herring</u> acknowledged that an attorney's right to present a closing argument is not unbounded:

<u>This is not to say that closing arguments in a criminal case must be uncontrolled or even unrestrained. The presiding judge must be and is given great latitude in controlling the duration and limiting the scope of closing summations</u>. He may limit counsel to a reasonable time and may terminate argument when continuation would be repetitive or redundant. He may ensure that argument does not stray unduly from the mark, or otherwise impede the fair and orderly conduct of the trial. <u>In all these respects he must have broad discretion</u>.

. . . .

Some cases may appear to the trial judge to be simple – open and shut – at the close of the evidence. And surely in many such cases a closing argument

will, in the words of Mr. Justice Jackson, be "likely to leave [a] judge just where it found him."  But just as surely, there will be cases where closing argument may correct a premature misjudgment and avoid an otherwise erroneous verdict.  And there is no certain way for a trial judge to identify accurately which cases these will be, until the judge has heard the closing summation of counsel.

[Id. at 863 (emphasis added) (citations omitted).]

See also Thomas A. Mauet, Trial Techniques 387 (8th ed. 2010) ("Closing arguments are the chronological and psychological culminations of a jury trial. They are the last opportunity to communicate directly with the jury.").

New Jersey case law has recognized these general principles.  See R. 1:7-1(b) (granting counsel a right to present closing statements at the end of a case "except as may be otherwise ordered by the court"); see also State v. Briggs, 349 N.J. Super. 496, 500-01 (App. Div. 2002) (citing Herring by analogy in upholding defense counsel's right to present "meaningful argument" at sentencing).

In keeping with these concepts, our trial courts have been granted the discretion to allow counsel to present supplemental closing arguments in appropriate circumstances, particularly where there has been a significant gap in time between deliberations stopping and resuming, or where a legal issue has arisen that might warrant further advocacy.  See, e.g., State v. Rovito, 99 N.J. 581, 588 (1985) (finding no error when a trial court granted an additional

10

ten minutes to both parties to present supplementary summations after the court decided to charge the jury on an additional provision after the completion of summations); see also State v. Speth, 324 N.J. Super. 471 (Law Div. 1997), aff'd, 323 N.J. Super. 67 (App. Div. 1999) (in which the trial court permitted both sides to supplement any summations after deliberations were underway, in a complex case where lengthy deliberations over several weeks had been interrupted by religious holidays and a weekend).

C.

Mindful of the well-established important function of summations, we now turn to the principles that pertain to the process of playing back or reading back portions of a trial, when requested by a jury.

Our courts have long recognized that juries sometimes will ask to review testimony when they are in the midst of deliberations. The Supreme Court has held that "[a]bsent 'some unusual circumstance,' those requests should be granted." State v. Miller, 205 N.J. 109, 119-20 (2011) (quoting State v. Wolf, 44 N.J. 176, 185 (1965)). The Court reasoned in Miller that "[t]he requests are a clear sign that the evidence sought is important to the deliberative process" and therefore, "the 'true administration of justice' requires that judges typically accede to jury requests to review testimony." Miller, 205 N.J. at 120.

Comparably, judges who have reserved decision in a case sometimes play back the recorded arguments of counsel. They do so in order to refresh or clarify their recollections before issuing a ruling. Jurors understandably may want a similar opportunity before rendering a verdict.

Trial courts have "broad discretion as to whether and how to conduct read-backs and playbacks." Id. at 122; see also State v. Wilson, 165 N.J. 657, 660 (2000) ("It is well-established that 'the reading of all or part of the testimony of one or more of the witnesses at a trial, criminal or civil, at the specific request of the jury during their deliberations is discretionary with the trial court.'") (quoting Wolf, 44 N.J. at 185). A party opposing the playback of testimony has the burden to object and demonstrate prejudice. Miller, 205 N.J. at 124; see also State v. Ortiz, 202 N.J. Super. 233, 245 (App. Div. 1985).

The trial judge in the present case rightly noted that, unlike trial testimony, the arguments of counsel are not evidence, and should not be treated by a jury as such. Our Model Jury Charges reinforce that principle. See, e.g., Model Jury Charges (Criminal), "Criminal Final Charges" (rev. May 12, 2014). This does not mean, however, that jurors categorically are prohibited from hearing once again the closing arguments of counsel on appropriate terms and conditions – if, for some reason that arises in their deliberations, they wish to have those arguments repeated or replayed.

12

Jurors may have difficulty remembering exactly what counsel said in summations about a hotly disputed aspect of the evidence. Jurors also may not have heard the words of counsel in summation clearly if counsel spoke softly or mumbled, or they might not have understood them.

In such rare circumstances when they arise, we discern no reason why a playback or readback of closing arguments should be categorically disallowed, provided, of course, the summations of both sides are presented. Instead, trial courts should maintain the discretion to allow or disallow such requests, in the interests of justice.[1]

Other jurisdictions, most notably California, have recognized a trial court's discretionary authority to allow such readbacks or playbacks. As the California Supreme Court stated in People v. Gordon, 792 P.2d 251, 274 (Cal. 1990), "We do not doubt that a trial court's inherent authority regarding the performance of its functions includes the power to order argument by counsel to be reread to the jury or to be furnished to that body in written form. The exercise of such power must be entrusted to the court's sound discretion." (Emphasis added). See also People v. Pride, 833 P.2d 643, 680 (Cal. 1992)

---

[1] By analogy, our Rules of Court have been amended to require a written copy of the court's instructions in criminal cases to be provided to jurors in the jury room, in recognition that jurors may have trouble remembering the precise words of those instructions. See R. 1:8-8(b)(2).

(noting the trial court correctly concluded that it had discretion to deny the jury's request to playback summation and "expressed appropriate concern over diverting the jury's attention from proper consideration of the evidence and instructions"); People v. Sims, 853 P.2d 992, 1021 (Cal. 1993) (noting the "trial court erred in suggesting that it lacked authority to order the reading back of defense counsel's closing summation," but concluding the error was not prejudicial); People v. Gurule, 51 P.3d 224, 286 (Cal. 2002) (finding no abuse of discretion where a trial court declined a request for readback of closing argument, particularly when defense counsel's closing arguably had misstated the law).

New York courts likewise have recognized this principle. See, e.g., People v. Jones, 483 N.Y.S.2d 89, 89 (App. Div. 1984) (noting the trial court's discretion to grant such a jury request, but finding no "improvident" exercise of that discretion in denying the request in that case); People v. Foster, 499 N.Y.S.2d 808, 808 (App. Div. 1986) (finding no error in the court's denial of a similar jury request).

The only jurisdiction we know of that disallows the playback or readback of counsel's summations is Vermont, which perceived a risk of prejudice in engaging in such a procedure where only the State's summation was read back. State v. Fitzgerald, 449 A.2d 930, 932 (Vt. 1982) (criticizing a

A-2838-16T1

trial court for allowing a rereading of only a prosecutor's summation without the defense summation, but finding no "clear error" requiring the jury's verdict to be overturned).

Consistent with the practice in California and New York, we hold that trial courts in New Jersey have the discretion to grant requests from juries to play back or read back closing arguments. In exercising that discretion, courts may consider such factors as: (1) whether counsel made improper or inflammatory remarks in summation; (2) whether counsel materially misstated the evidence; (3) whether multiple objections to the closing arguments had been interjected, and whether they were sustained or overruled; (4) the length and complexity of the trial; (5) whether deliberations had been lengthy or significantly interrupted; and (6) other practical and equitable considerations.

Applying these precepts of discretion to the present case, we find no reason to grant defendant a new trial on this basis. The trial was not particularly lengthy. The issues were not especially complex. The jurors' deliberations only covered portions of two days. The weekend gap between those two days was not protracted. Although defense counsel was interrupted in summation a few times by the prosecutor with objections, none of those interruptions was exceptional.

A-2838-16T1

While it may have been helpful, in retrospect, for the trial court to have accommodated the jurors' request to hear the closing arguments again, the denial of their request was not an abuse of discretion, nor a reversible error mandating a new trial. Notably, the jurors decided to forego a playback of Officer DeJesus's testimony, after being told that his playback would consume about seventy minutes. A playback of both counsel's summations presumably would have taken considerable time, and it is possible the jurors would have eschewed that playback as well. We will not speculate that the denial of the playback request was prejudicial to either party.

In sum, although we agree with defendant that the trial court did possess the inherent authority to grant the jurors' playback request, the court did not misapply its discretion in denying it. Moreover, the denial did not manifestly prejudice defendant, certainly not to a degree warranting a new trial. R. 2:10-2.

Affirmed in part, and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION